# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES ex rel. WILLIAM J.
GILLIAM,
　　　　　*Plaintiff-Appellant,*

　　　　v.

GENERAL DYNAMICS CORPORATION,
　　　　*Defendant-Appellee,*

　　　　and

UNITED STATES OF AMERICA,
　　　　*Party in Interest.*

No. 03-1912

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
C. Weston Houck, Senior District Judge.
(CA-01-3023-12-2)

Argued: May 7, 2004

Decided: July 12, 2004

Before NIEMEYER, MICHAEL, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Gregg Meyers, Charleston, South Carolina, for Appellant.
Richard Thomas Franch, JENNER & BLOCK, Chicago, Illinois, for
Appellee. **ON BRIEF:** Lawrence S. Schaner, John T. Ruskusky,
JENNER & BLOCK, Chicago, Illinois, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

The district court granted summary judgment to the defendant, General Dynamics Corporation, in this qui tam suit brought by William J. Gilliam under the False Claims Act, 31 U.S.C. § 3729 et seq. We affirm.

General Dynamics is a defense supplier with a division called Electric Boat. Electric Boat is one of only two nuclear capable shipbuilders in the country (the other is Newport News Shipbuilding and Dry Dock Company). In the 1980s and 1990s, Electric Boat was awarded the contracts for all three Seawolf class nuclear attack submarines. Part of the history of the Seawolf is set forth in *Newport News Shipbuilding & Dry Dock Co. v. General Dynamics Corp.*, 960 F.2d 386 (4th Cir. 1992). For our purposes, it suffices to explain that Congress scaled back the number of Seawolf submarines it planned to authorize after the end of the Cold War. Congress engaged in considerable debate over whether to authorize the final Seawolf, the SSN-23. The proponents of the SSN-23 argued that building the sub was necessary in order to maintain the country's industrial capacity to build nuclear submarines, which required two nuclear capable shipyards, until the next class of nuclear submarines was authorized. Congress eventually authorized the SSN-23, and the contract was sole-sourced to Electric Boat. Gilliam brought this suit on behalf of the United States under the False Claims Act, alleging that General Dynamics's Electric Boat division made false statements that induced the United States to award the SSN-23 contract to Electric Boat without competitive bidding. The district court granted summary judgment to General Dynamics.

The elements of a False Claims Act claim are: (1) "a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the gov-

ernment to pay out money or to forfeit moneys due." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999). Materiality in a civil False Claims Act case is a "mixed question of law and fact." *Id.* at 785. Gilliam alleges only that the decision to *sole-source* the SSN-23 was prompted by Electric Boat's misrepresentations. He does not allege that Electric Boat made any misrepresentations inducing Congress to authorize construction of the final Seawolf. Gilliam's theory is that Electric Boat lied to the government by saying it would go out of business unless it received the SSN-23 contract without competitive bidding. Alternatively, he argues that Electric Boat should have informed Congress that it had, but chose not to pursue, potentially lucrative commercial opportunities that would have kept the company afloat without the SSN-23. The United States was damaged, Gilliam's theory goes, because it paid more for the SSN-23 than it would have if the contract had been competitively bid. Gilliam says that bidding the SSN-23 would have kept Electric Boat honest and held down the cost of the SSN-23, even though the record indicates that Newport News would not have been price competitive with Electric Boat.

We review the grant of summary judgment de novo. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817 (4th Cir. 1995). Assuming for the sake of argument that Gilliam's theory would be actionable under the False Claims Act, we conclude that there is no genuine issue of material fact on the false statement or materiality elements and that General Dynamics is therefore entitled to summary judgment. *See id.* There is no evidence to support Gilliam's argument that Electric Boat told the government it would shut down if it was merely forced to submit a bid for the SSN-23. Electric Boat's president, Jim Turner, did tell Congress that "[p]remature competition will drive up costs unnecessarily and risk permanent loss of Electric Boat," but he was referring only to the competition scheme the government was considering for the next class of nuclear attack submarines, not the SSN-23. J.A. 347. Although we construe the evidence in the light most favorable to the non-moving party at summary judgment, we do not take evidence out of context. *Sylvia Dev. Corp.*, 48 F.3d at 821-22. A factfinder simply could not construe Turner's statement as saying anything false about competition for the SSN-23. *See id.* at 822.

Gilliam's alternative argument (that Electric Boat should have disclosed that it chose not to pursue commercial opportunities, prompt-

ing the government to sole-source the SSN-23 to Electric Boat) fares no better. Again, there is no genuine issue of material fact on the false statement element because Electric Boat did disclose both to Congress and the Navy that it considered commercial opportunities, but had abandoned them. Furthermore, there is no evidence that any lack of disclosure was material to the decision to sole-source the SSN-23 to Electric Boat. Assuming Electric Boat's foregone business opportunities would have been as lucrative as Gilliam claims, they at most indicate that Electric Boat could have survived as a commercial entity without the SSN-23 contract. The evidence in the record, however, indicates that the government was interested in maintaining nuclear shipyard capacity. No evidence indicates that the commercial opportunities would have preserved Electric Boat's capacity to build nuclear ships. Thus, Electric Boat's failure to disclose its foregone commercial opportunities could not have been material to the decision to sole-source the SSN-23.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.